**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

**CALVIN JONES**

> Plaintiff,

v.

**CITY OF FORT LAUDERDALE**, a Florida
municipal corporation

> Defendant.

**COMPLAINT**

COMES NOW, the Plaintiff, CALVIN JONES, hereinafter "Plaintiff" by and through the undersigned counsel and hereby brings this action against the CITY OF FORT LAUDERDALE hereinafter, "Defendant", for compensatory damages, exemplary damages, costs, and attorney's fees for violations under 42 U.S.C. §1983 *et seq*., and in support thereof alleges as follows:

**JURISDICTION**

1.      This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. The United States District Court for the Southern District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.   Plaintiff CALVIN JONES further invokes the supplemental jurisdiction of the United States District Court to hear pendant State tort claims arising under State law, pursuant to 28 U.S.C. § 1367(a).

2.    Plaintiff, CALVIN JONES, has fully complied with all conditions precedent to bringing this action imposed by the laws of the State of Florida, and particularly by the provisions of § 768.28 of the Florida Statutes.

## PARTIES

Plaintiff, CALVIN JONES is an individual residing in the County of Broward, State of Florida.

Defendant CITY OF FORT LAUDERDALE, (hereinafter, "CITY") is a Florida municipal corporation, organized and existing under the laws of the State of Florida, and located in Broward County, Florida. In this cause, the CITY acted through its agents, employees, and servants, police offiers, and including but not limited to Chief of Police Franklin Adderley, and others.

## BACKGROUND FACTUAL ALLEGATIONS

1.    On March 22, 2015, the Plaintiff was living in the downtown Fort Lauderdale area located at 1401 NE 53rd Street, Fort Lauderdale, Broward County, Florida.

2.    Plaintiff left his residence at or around 3:00 a.m. to pick up his wife from work.

3.    As Plaintiff left his residence, he noticed a City of Fort Lauderdale police cruiser moving slowly westbound on Northeast 53rd Street toward his place of residence.

4.    The City of Fort Lauderdale police cruiser turned around at the dead end of the street and stopped the cruiser facing east on Northeast 53rd Street.

5.    After Plaintiff entered his 2005 Maserati QP (hereinafter, the "Vehicle"), he exited the residential community, known as the Harbor Cove Condominiums, in the Vehicle.

6.    Plaintiff having noticed the police cruiser in the vicinity, he took extra precaution to ensure

that he was wearing his seat belt and was travelling under the posted speed limit.

7.  Plaintiff proceeded to pass the police cruiser which was parked on Northeast 53rd Street on Plaintiff's right hand side of the Vehicle.

8.  Immediately after passing the police cruiser, the cruiser proceeded to follow the Plaintiff's Vehicle eastbound on Northeast 53rd Street.

9.  Plaintiff proceeded to make a right turn onto Northeast 14th Way.

10. Plaintiff continued to travel on Northeast 14th Way for approximately one-tenth of a mile, while the police cruiser continued to follow him.

11. At the intersection of Northeast 14th Way and Northeast 50th Court, there is a stop sign. Plaintiff came to a full stop in advance of the white marked stop bar at the stop sign.

12. Plaintiff made a right at the intersection and began travelling westbound on Northeast 50th Court.

13. Immediately after making the right hand turn onto Northeast 50th Court, the police cruiser turned on its lights and pulled Plaintiff over to the right side of the road.

14. Two officers approached the Plaintiff vehicle, one on each side, and Plaintiff opened both front windows in order to speak to the officers.

15. One of the officers told him that he didn't use his directional indicator.

16. Plaintiff informed the officers that he was late in picking up his wife from work and requested that they issue him a citation if he did anything wrong.

17. One officer began stalling for time, while the other officer returned to the police cruiser. The remaining officer questioned the Plaintiff for approximately twenty to thirty minutes.

18. After the twenty to thirty minute delay, a second police cruiser equipment with a K-9 unit. The K-9 remained in the cruiser while the new officer began questioning the Plaintiff.  He

asked the Plaintiff if he had any contraband in the Vehicle, and Plaintiff replied that he didn't.

19. At this point, the officer asked the Plaintiff if he would consent to a search of the Plaintiff's Vehicle and the Plaintiff declined.

20. The officer said that the Plaintiff was on "City Property" and he had a "narcotics dog" with him and proceeded to open the Plaintiff's driver's side door and he instructed the Plaintiff to get out of the Vehicle.

21. As Plaintiff exited the Vehicle, the Police Officers instructed the Plaintiff to stand behind the Plaintiff's vehicle with Plaintiff's body facing the rear of the Vehicle.

22. The two officers that pulled the Plaintiff over remained with the Plaintiff behind the vehicle while the Officer who arrived with the K-9 unit proceeded to retrieve the K-9 from the second police cruiser.

23. The K-9 Officer proceeded to slowly walk the K-9 around the exterior of the Plaintiff's vehicle.

24. Next, the officer touched the Plaintiff passenger rear door with his hand, and the K-9 leaned on the Plaintiff's vehicle with his front paws on the rear passenger door and started scratching the door with his paws.

25. The Plaintiff yelled out to the officers that Plaintiff didn't approve of the K-9 scratching at his luxury automobile.

26. The officer proceeded to then touch the front passenger door, and the K-9 repeated the same process and began scratching the front passenger door as well.

27. Plaintiff once again yelled out to the officers as to why the officers were allowing the K-9 to continue to scratch up Plaintiff's Vehicle.

28. The K-9 officer proceeded to open the front passenger side door thereby allowing the K-9 to enter the Vehicle.

29. The K-9 officer proceeded to exclaim, "We got something".

30. The officer standing next to the Plaintiff yelled out, "Oh yeah. I knew it, I knew it".

31. The K-9 began scratching and sniffing the entire interior passenger cabin of the Vehicle.

32. While the K-9 continued the search of the interior of the Plaintiff's vehicle, the other officers were looking in the Vehicle using their flashlights from the outside.

33. The K-9 officer then opened the Plaintiff's trunk using the trunk latch on the rear of the Vehicle and then K-9 unit jumped into the trunk and began searching the trunk.

34. The K-9 officer then manually searched the trunk and when he was finished he slammed the trunk closed.

35. This and similar model Maserati vehicles have trunk types which are designed to close by gently closing the trunk most of the way and the trunk completes the closing of the trunk electronically.

36. As a result of the unnecessary force used in the closing of the Vehicle's trunk, the trunk became broken, and the pressure from the improper slamming shut of the trunk resulted in a hair line crack in the rear window of the Vehicle.

37. After the K-9 competed its search of the Vehicle, the K-9 officer instructed the K-9 to search the Plaintiff's body for contraband.

38. While the K-9 search was being conducted, the officer began a pat-down search of the Plaintiff and began removing the Plaintiff's personal property from the Plaintiff's pockets and placed them on the hood of the car.

39. At this time, the officers returned the K-9 to the police cruiser.

40. Two out of the three officers then began manually searching the interior of Plaintiff's vehicle.

41. One officer proceeded to press the button to open the glove box, and didn't take proper precaution in gently opening the glove box and the glove box broke off its housing.

42. At this point the officers began testing an unknown object on the floor of Plaintiff's vehicle.

43. At no time during the entire traffic stop did the K-9 or any of the three Officers find any contraband or illegal substances in the Plaintiff's Vehicle or on his person.

44. At this time, the Plaintiff requested that a police Sargent be called.  The officers responded by saying that no Sargent was available.

45. The Plaintiff requested each officer's name and badge number and only one officer agreed to give the Plaintiff a card.

46. The first officer handed the Plaintiff a traffic citation.

47. The Plaintiff then proceeded to get into his vehicle and drove immediately to the City of Fort Lauderdale Police Station located at 1300 W Broward Blvd, Fort Lauderdale to file a complaint.

48. The Plaintiff met with Sargent Pfund and filed a complaint with him.


## COUNT I
## FOURTH AMENDMENT TEMPORARY DETENTION CLAIM
## COGNIZABLE UNDER 42 U.S.C. §1983

49. Plaintiff re-alleges and incorporates the background factual allegations contained herein.

50. Officers of Defendant, by direct act or indirect procurement, personally participated in or proximately caused the Terry-stop of Plaintiff JONES in the absence of reasonable

suspicion that Plaintiff JONES had committed, was committing, or was about to commit any criminal offense, or that Plaintiff JONES was armed or dangerous.

51.    No reasonable person in the position of Plaintiff JONES would have felt free to continue about their business during the Terry-stop, and in fact, Plaintiff JONES was expressly prohibited from re-entering his Vehicle by members of Defendant CITY OF FORT LAUDERDALE's Police Department.

52.    The Plaintiff was detained for an unreasonable period of time while a K-9 unit was dispatched to the location of the traffic stop.

53.    The use of a K-9 unit after the completion of an otherwise lawful traffic stop exceeded the time reasonably required to handle the matter and therefore violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  *See Rodriguez v. United States*, 575 U.S. ___, 135 S.Ct. 1609, 191 L.Ed.2d 492, 83 USLW 4241.

54.    The Terry-stop initiated by Defendant was objectively unreasonable, in violation of Plaintiff JONES's clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983, to be free from temporary detention in the absence of reasonable suspicion that Plaintiff JONES had committed, was committing, or was about to commit any criminal offense.

55.    As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff JONES has suffered grievously, has been greatly humiliated, endured mental suffering, damaged reputation and has suffered property damage.

56.    As a further direct and proximate result of the conduct of Defendant, Plaintiff JONES suffered loss of his liberty and freedom, mental anguish, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff JONES will

suffer the losses in the future, in violation of Plaintiff JONES's civil rights. Plaintiff JONES has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff, JONES prays:

    a.   Judgment for compensatory damages in excess of $ 15,000 dollars;

    b.   Judgment for exemplary damages;

    c.   Court Costs;

    d.   Reasonable attorney's fees, pursuant to 42 U.S.C. §1988;

    e.   Trial by jury as to all issues so triable; and

    f.   Such other relief within the sound discretion of this Honorable Court.

## COUNT II
## UNLAWFUL SEARCH CLAIM COGNIZABLE UNDER 42 U.S.C. § 1983

57.   Plaintiff re-alleges and incorporates the background allegations contained herein.

58.   Defendant entered Plaintiff's Vehicle without a search warrant, other lawful authority, or voluntary consent.  Alternatively, the scope of the search exceeded any lawful authority or voluntary consent.

59.   At all times material hereto, officers of the Defendant knew via police radio communications that Plaintiff's vehicle was stopped and had called for a drug sniffing K-9 unit to be dispatched to the location of the traffic stop.

60.   At all times material hereto, Defendant's officers knew or should have known that the stop of the Plaintiff's vehicle was in the absence of reasonable suspicion that the Plaintiff had committed, was committing, or was about to commit any criminal offense, in violation of the Fourth Amendment.

61.   The conduct of Defendant towards Plaintiff was objectively unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 to be secure in his vehicle against unreasonable search and seizure.

62.   As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been greatly humiliated, mental suffering, damaged reputation and has suffered property damage.

63.   As a further direct and proximate result of the conduct of Defendant, Plaintiff JONES suffered loss of his liberty and freedom, mental anguish, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff JONES will suffer the losses in the future, in violation of Plaintiff JONES's civil rights. Plaintiff JONES has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff, JONES prays:

   a.   Judgment for compensatory damages in excess of $ 15,000 dollars;

   b.   Judgment for exemplary damages;

   c.   Court Costs;

   d.   Reasonable attorney's fees, pursuant to 42 U.S.C. §1988;

   e.   Trial by jury as to all issues so triable; and

   f.   Such other relief within the sound discretion of this Honorable Court.

## COUNT III
## INVASION OF PRIVACY CLAIM

64.     Plaintiff re-alleges and incorporates the background allegations contained herein.

65.     The entry into Plaintiff vehicle and search of its contents by members of Defendant CITY OF FORT LAUDERDALE's police department, was without a search warrant, other lawful authority, or voluntary consent.

66.     The conduct was objectively unreasonable, and caused Plaintiff outrage, mental suffering, shame, and humiliation, and was undertaken in such a manner as to cause outrage, or mental suffering, shame, or humiliation, to a person of ordinary sensibilities.

67.     The entry constitutes an invasion upon Plaintiff physical solitude or seclusion, and constitutes invasion of privacy.

68.     The conduct of members of the Defendant occurred during the course and scope of their employment for Defendant CITY OF FORT LAUDERDALE police department.

69.     As a direct and proximate result of the acts described above, Plaintiff suffered grievously, has been greatly humiliated, and has mental suffering, a damaged reputation, and has suffered property damage

70.     As a further direct and proximate result of the conduct of Defendant, Plaintiff JONES suffered loss of his liberty and freedom, mental anguish, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff JONES will suffer the losses in the future, in violation of Plaintiff JONES's civil rights. Plaintiff JONES has also agreed to pay the undersigned a reasonable fee for his services herein.


WHEREFORE, Plaintiff, JONES prays:

   g.   Judgment for compensatory damages in excess of $ 15,000 dollars;

     h.   Judgment for exemplary damages;

     i.   Court Costs;

     j.   Reasonable attorney's fees, pursuant to 42 U.S.C. §1988;

     k.   Trial by jury as to all issues so triable; and

     l.   Such other relief within the sound discretion of this Honorable Court.

**COUNT IV**
**NEGLIGENCE**

71.    Plaintiff re-alleges and incorporates the background allegations contained herein.

72.    The unreasonable and unconsented search of Plaintiff's Vehicle was done in a negligent, careless and reckless manner.

73.    Defendant's action and non-actions thereby constituted the actual and proximate cause of the physical damage to the Plaintiff's Vehicle.

74.    Defendant, owed a duty of care to Plaintiff to conduct the search of Plaintiff's Vehicle to protect the Plaintiff's property from unnecessary damage.

75.    The Defendant breached the duty of care owed to the Plaintiff.

76.    That as a direct and proximate result of the Defendant's, negligence, carelessness, and recklessness; the Plaintiff, sustained serious property damage to the Plaintiff's vehicle including damage to the property, loss of use and enjoyment, contents and loss in value.

     WHEREFORE, the Plaintiff demands judgment against the Defendant, for damages, including, but not limited to, damage to the Plaintiff's Vehicle its contents, loss of use, costs, interest as allowed by law, and such other relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

77.     Plaintiff request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure.

DATED:  February 5, 2016.

MILITZOK & LEVY, P.A.
*Attorneys for Plaintiff*
The Yankee Clipper Law Center
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
(954) 727-8570 - Telephone
(954) 241-6857 – Facsimile
mjm@mllawfl.com – E-Mail

By: /s/ Matthew J. Militzok
MATTHEW J. MILITZOK, ESQ.
Fla. Bar No.: 0153842